UNITED STATES of America, Plaintiff-Appellee,

v.

James Paul DAVIDSON, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Evelyn Vaughn DAVIDSON, Defendant-Appellant.

Nos. 16676, 16677.

United States Court of Appeals Sixth Circuit.

Oct. 7, 1966.

Joe J. Wild, Jr., Chattanooga, Tenn., for appellants, J. O. Clark, Iuka, Miss., on the brief, Moore & Wild, Chattanooga, Tenn., and Clark & Clark, Iuka, Miss., of counsel.

Jere B. Albright, Memphis, Tenn., for appellee, Thomas L. Robinson, U. S. Atty., Jere B. Albright, Asst. U. S. Atty., Memphis, Tenn., Fred M. Vinson, Jr., Asst. Atty. Gen., Dept. of Justice, Criminal Division, Washington, D. C., on the brief.

Before WEICK, Chief Judge, PHILLIPS, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

James Paul Davidson and his wife Evelyn Vaughn Davidson, defendants-appellants herein, were indicted on a one-count indictment charging them with receiving thirty-eight stolen wrenches of the property of the United States, valued in excess of $100, with the intent to convert them to their own use and gain, knowing them to have been stolen, in violation of Section 641, Title 18, U.S.C. They were tried to a jury in the United States District Court for the Western District of Tennessee. The jury returned a verdict of guilty against each defendant, "recommending leniency." Each of the defendants was sentenced to imprisonment for six years and to payment of a fine of $5000. Both defendants were to be eligible for parole at such time as the Board of Parole should determine in accordance with Section 4208 (a) (2), Title 18, U.S.C. This appeal followed. The appellant James Paul Davidson died in the interim between trial and the submission of the case on appeal.

The appellants present several questions on this appeal, only one of which we find it necessary to discuss. Did the district judge err in failing to order a mistrial after the jury reported on several occasions that it was unable to agree on a verdict and in instructing the jury that it might recommend leniency?

The case, as stated by government counsel in their brief, was to a large extent based on circumstantial evidence. It was a close case as evidenced by the difficulty the jury had in agreeing on a verdict. This is particularly true as regards the evidence against the defendant-appellant Evelyn Vaughn Davidson.

The district judge gave an excellent charge to the jury on the law applicable to the facts of the case as the jury might find them. The deliberations of the jury extended over parts of three days. This case was submitted to the jury on Friday afternoon, December 11th, and it entered upon its deliberations. At 4:35 p. m., the judge inquired whether the jury would like to continue its deliberations or return the following morning. The jurors decided to continue their deliberations which they did until 6:10

p. m., when they requested that they be permitted to go to dinner. The judge ordered them to try a little while longer, "And rap on the door if you think you are not making any headway." At 6:40, the jury knocked and the judge ordered them to return on Saturday morning, December 12th, at 10:30 a. m.

■ The jury resumed deliberations at the appointed time but returned to the court room at 10:45 and asked for further instructions. The judge reread the entire charge to the jurors. At 12:25 p. m., the jury returned to the court room and reported a disagreement. The foreman said, "And we searched our own minds as to whether this impasse could be circumvented, and it is our unanimous opinion that this would not be. * * * But we are in disagreement and we don't believe this impasse can be circumvented." After some discussion with the jurors, the judge said:

"Now, we are in partners on this thing, the Judge and the jurors. I like to look at it in that way. And the Court is here to help you in every way possible within the bounds of reason."

He then stated that he had a right to comment on the evidence but that he had never done so. He believed that such comment was an encroachment on the function of the jury. He gave the jury the Allen charge which has been approved by the Supreme Court. Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528. We find no error in this respect.

Following the Allen charge, the judge said:

"Half of our cases are not jury cases. Over half of them are non-jury cases in which the Court is called upon to find the facts and state the legal conclusions. And the judge must do that in writing. He must put down and make written findings of fact. And I, in the twenty-four years on this court, have never turned one back yet that I couldn't decide.

"I just throw that out to you for what it is worth.

"Gentlemen, we can't consider entering a mistrial at this time."

It was then 12:40 and the judge excused the jurors to go to lunch.

The jury returned after lunch for further deliberation and at 3:43 p. m. reported to the court that it was conclusively deadlocked. The foreman of the jury suggested to the judge that if he would express an opinion or comment on the facts it might "unlock the situation." He added, "Other than that, it is our conclusive opinion that we are just absolutely deadlocked." The district judge properly declined to express an opinion at that stage of the case.

One of the jurors expressed the view that further deliberation would not help. At this point the judge excused the jury and requested the jurors to return at 9:30 on Monday morning, December 14th. In requesting them to return, he said, "I think this jury can decide this case." He further said, "But the Court isn't justified in declaring a mistrial in this case."

The jury resumed its deliberations on Monday morning at 9:30 a. m. At 11:15, it requested an audience with the court for the purpose of inquiring about a certain matter. The foreman of the jury then stated, "The jury would like to know whether it has the right to ask for leniency should or in the event a guilty verdict is returned." The judge said:

"In answer to your question, sometimes that is done. But the Court would say to you in answer to your question that you may do it in this case. But it should be understood that that is a matter which rests entirely within the discretion of the Court, you understand, and it would not be binding upon the Court in any way.

"Does that answer your question?

"THE FOREMAN: Yes, sir, it does.

"THE COURT: All right, take the jury back out."

The jury then returned to its deliberations. Thereafter, as appears in the record, in about one half hour, the jury returned to the court room and reported verdicts of guilty against both defendants with recommendations of leniency.

■ It is our conclusion that it was error for the district judge, under the circumstances of this case, to tell the jury that it might recommend leniency in the event that it returned verdicts of guilty. It is obvious that this "unlocked the situation" and prompted the jury to return its verdicts of guilty. This statement of the court regarding a recommendation of leniency, in view of the proceedings that transpired subsequent to the general charge of the court, was prejudicial to the defendants. While the judge told the jury that such a recommendation was not binding on him, his statement that "you may do it in this case" would lead the jury to infer that it would have some effect on the punishment to be meted out to the defendants. It is apparent that the trial judge in sentencing the defendants to six-year prison terms and in assessing fines of $5000 did not follow the jury's recommendations. The maximum sentence under the statute (Section 641, Title 18, U.S.C.) is ten years' imprisonment and a fine of $10000. Of course, the trial judge, as he told the jury, was not bound to follow its recommendations. But this demonstrates the fallacy of permitting the jury to make such a recommendation.

■ It has been the practice in criminal trials in federal courts to instruct the juries that they are not to be concerned with the punishment of defendants, except where it is so provided by statute. In this case the judge instructed the jury "You do not fix the punishment in your verdicts. This is left to the sound discretion of the Court, in the event you return guilty verdicts." Judges Mathes and Devitt, in Federal Jury Practice and Instructions, Section 15.07, p. 157, recommend the following instructions:

"Unless otherwise instructed, punishment provided by law for the offense-offenses charged in the indictment-information is a matter exclusively within the province of the Court, and should never be considered by the jury in any way, in arriving at an impartial verdict as to the guilt or innocence of the accused."

A subsequent instruction that the jury may recommend leniency is in conflict with the instruction in the general charge that the jury shall not consider the punishment of a defendant in arriving at its verdict.

■ It is axiomatic that it is the exclusive function of juries to determine whether defendants are guilty or not guilty, and of the court to determine matters of punishment. Sullivan v. United States, 317 F.2d 101, 102, C.A.5, cert. den. 375 U.S. 854, 84 S.Ct. 114, 11 L.Ed. 2d 81; McClanahan v. United States, 292 F.2d 630, 634, C.A.5, cert. den. 368 U.S. 913, 82 S.Ct. 193, 7 L.Ed.2d 130. The jury must make this determination upon the evidence admitted by the trial judge and his instructions upon the law applicable to the facts as it finds them to be. When the court permits the jury to indulge in a recommendation of leniency, it is allowing the jury to give consideration to the punishment that defendants may receive.

■ Defense counsel made no motion for a mistrial and did not make any objection to the instruction that the jury might recommend leniency in this case. They did raise the question on motion for new trial. But when the jury's verdicts turn, as they obviously did in these cases, on the right to recommend leniency, the permission to make such recommendation is plain error which affected the substantial rights of the defendants. Rule 52(b) F.R.Cr.P.

■ The general rule concerning the matter of commenting to the jury on the punishment that a defendant may receive in a criminal case is well stated in Lyles v. United States, 103 U.S.App.D.C. 22,

254 F.2d 725, 728, cert. den. 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067, 362 U.S. 943, 80 S.Ct. 809, 4 L.Ed.2d 771, 368 U.S. 992, 82 S.Ct. 610, 7 L.Ed.2d 529.

> "This point arises under the doctrine, well established and sound, that the jury has no concern with the consequences of a verdict, either in the sentence, if any, or the nature or extent of it, or in probation."

The doctrine was not applicable in this case. The issue was insanity and the jury might have returned any one of three verdicts.

Where trial judges have transgressed this rule, the question usually considered by the reviewing courts is whether it was prejudicial to the defendant.

In Lovely v. United States, 169 F.2d 386, 391, C.A.4, the court said:

> "And we think that error was committed to the prejudice of defendant when the jury was instructed that a person sentenced to life imprisonment was eligible to parole after fifteen years. The jury had nothing to do with the punishment of the defendant, except that under the statute they might decide whether or not he should be given capital punishment; and to charge as to eligibility for parole after fifteen years was to becloud the issue before them and open the way to a compromise verdict. What they were to decide was whether defendant was guilty or not and, if so, whether he should be given capital punishment."

In Demetree v. United States, 207 F.2d 892, 896, C.A.5, the court said:

> "Our conclusion that the judgment should be reversed because of the error of the judge in inducing the verdict, notwithstanding the jury's stated inability to agree, by stating to them that the defendant could be put upon probation or fined, and his ready assurance, in answer to the jury's question as to his own attitude, in effect that he would be lenient, makes it unnecessary for us to consider in detail the grounds of error assigned in groups five and six."

In Strauch v. United States, 213 F.2d 805, C.A.6, vacated by the Supreme Court on a different ground 348 U.S. 905, 75 S.Ct. 312, 99 L.Ed. 710, the trial judge commented at length to the jury on the subject of the penalty and the punishment that the defendants might receive. No question was raised on this point either before the trial court or on the appeal. It was raised by a member of the panel on rehearing. The majority of the court ruled that it was not prejudicial. Chief Judge Gourley, of the Western District of Pennsylvania, sitting with the court by designation, dissented, taking the view that it was plain error which affected the substantial rights of the defendants.

Erwin v. United States, 242 F.2d 336, C.A.6, was an embezzlement case. The trial judge instructed the jury that if it should appear that the defendant did not receive any money "that would be a circumstance that should be taken into consideration by the court in determining what sentence should be imposed." Judge McAllister, speaking for the majority, said, at p. 337:

> "We do not consider this reversible error, in the instant case; but in other cases, according to circumstances or the language of the instructions, such language might well be suggestive and prejudicial; and it is good practice for a trial court not to refer to the possibilities of sentencing in his instructions."

The late Shackelford Miller, Jr., dissenting, said:

> "In my opinion it was prejudicial error for the District Judge to encourage a verdict of guilty by suggesting to the jury the probability of a light sentence."

In Smith v. United States, 6 Cir., 230 F.2d 935, the trial judge permitted the jury to make recommendations and verdicts were returned with "mitigating circumstances". This Court held this to be prejudicial error. At p. 940, the Court said, "It is best simply to advise

the jury that they have nothing to do with the penalty."

Counsel for appellees have cited Gariepy v. United States, 6 Cir., 220 F.2d 252, cert. den. 350 U.S. 825, 76 S.Ct. 53, 100 L.Ed. 737, in which our Court found no reversible error where the trial judge instructed the jury that it might recommend mercy as to one defendant. In this case it appears that the evidence of guilt was overwhelming and there is no record, such as we have in the case before us, of the jury being deadlocked and being unable to agree on a verdict.

In Harris v. United States, 243 F.2d 74, C.A.5, cert. den. 355 U.S. 817, 78 S.Ct. 20, 2 L.Ed.2d 33, the trial judge, in a supplemental instruction, said, "You can recommend as to sentence if you want to, but beyond that you cannot do anything." The court held that this was not calculated to induce a verdict. Counsel for the defendant not only did not object to the instruction but objected to the request of government counsel to tell the jury that the matter of sentence was completely out of their hands.

In Ryan v. United States, 99 F.2d 864, C.A.8, cert. den. 306 U.S. 635, 59 S.Ct. 484, 83 L.Ed. 1037, rehearing den. 306 U.S. 668, 59 S.Ct. 586, 83 L.Ed. 1063, appeal dismissed 8 Cir., 106 F.2d 1016, where the trial judge commented to the jury concerning sentence, the court said, 99 F.2d at p. 873:

"What is here said on this subject must be understood to be confined to the peculiar facts and situation here presented. The practice of permitting a detailed discussion of the extent of punishment in the argument and of indulging in a discussion in the instructions of the punishment that may be anticipated in the event of conviction, is not to be commended; but, we think, in view of the arguments presented on behalf of all defendants, the instruction now complained of was provoked and rendered appropriate, if not necessary."

We conclude under all the facts and circumstances of this case that the trial judge's comments to the jury with reference to lieniency was prejudicial to the defendants and that it was conducive to a compromise verdict. We can understand the reluctance of a trial judge to declare a mistrial, after a long and carefully tried case, because of the disagreement of the jury. However, in our system of jurisprudence it is bound to happen on occasion. The only safe procedure to follow is to limit the jury strictly to its function of determining the guilt or innocence of the defendant.

The judgment of the District Court is reversed and case remanded for further proceeding consistent with this opinion.

WEICK, Chief Judge (concurring).

I think also it was error for the trial judge to state to the jury, after he had delivered the Allen charge and advised the jury of its relationship with the court as a partner:

"Half of our cases are not jury cases. Over half of them are non-jury cases in which the Court is called upon to find the facts and state the legal conclusions. And the judge must do that in writing. He must put down and make written findings of fact. And I, in the twenty-four years on this court, have never turned one back yet that I couldn't decide.

"I just throw that out to you for what it is worth.

"Gentlemen, we can't consider entering a mistrial at this time."

In my opinion, there is little analogy between the duty of a judge to decide a case submitted to him and that of the twelve jurors who were unable, after long hours of deliberation, to agree upon a unanimous verdict. A judge, in reaching his decision, would not need to persuade eleven other persons to agree with it.

The statement of the judge might well have influenced the jurors to follow his example of deciding every case, particularly since they could recommend leniency, or it may have caused them to believe that they would be neglectful of

their duty if they did not return a verdict even though they were not in unanimous agreement.

It is not a violation of a juror's oath to refrain from agreeing to a guilty verdict if he has a reasonable doubt of the defendant's guilt.

The fact that the court stated, "I just throw that out to you for what it is worth," did not, in my judgment, minimize its harmful effect.

The error appears all the more prejudicial when viewed in the light of the entire proceedings that took place after submission of the case to the jury. They are graphically portrayed in the opinion of this court.